IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EDDIE ASH,

    Petitioner,

v.                                                 CASE NO. 4:08-cv-00029-MP-WCS

WALTER A. McNEIL,

    Respondent.

_____/

**O R D E R**

This matter is before the Court on Doc. 24, Report and Recommendation of the Magistrate Judge, which recommends that Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. 6) be denied. The Magistrate entered the Report on February 23, 2009. Petitioner filed an objection (Doc. 25) on March 9, 2009. With the Court's leave, Petitioner also filed a supplement to that objection (Doc. 28) on April 10, 2009. The Court has now completed a de novo review of those portions of the Report to which Petitioner objects. For the reasons stated below, the Report will be adopted, and the petition will be dismissed.

I.    Petitioner's Claims.

Petitioner states two grounds for the petition: (1) that his counsel was ineffective for not objecting to the trial court's failure to conduct a proper competency hearing before trial and for allowing Petitioner to proceed to trial incompetent; and (2) that, although a competency hearing was held, Petitioner was denied due process when the trial court relied upon testimony from one independent expert, rather than two or more as required by Rule 3.210 of the Florida Rules of Criminal Procedure.

To the extent Petitioner complains in ground two of errors at the state habeas corpus proceedings, that claim is not cognizable under § 2254. Also, the trial court's alleged noncompliance with Rule 3.2120 is not a cognizable claim under § 2254. See Bryan v. McDonough, WL 1812656 *3-4 (N.D. Fla. 2007) (not reported). However, the Eleventh Circuit has held that a petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competence was put at issue. Id. (citing Pate v. Robinson, 383 U.S. 375, 385, 86 S. Ct. 836, 842 (1966)). The Court will deny that claim for the reasons stated below.

In addition to the procedural grievance in ground two, Petitioner alleges that he was in fact incompetent when he proceeded to trial. The Court therefore liberally construes the petition as alleging in ground two that Petitioner's substantive due process rights were violated when he was tried and convicted while being incompetent. Although Petitioner did not state this as a separate ground for relief in his Rule 3.850 motion, he did allege then as he does now that he was in fact incompetent when he proceeded to trial. See Doc. 16, Ex. H, R. 8. In its order denying post-conviction relief, the state circuit court found that a competency hearing was held, that Petitioner was found to be competent, and that any error in determining Petitioner's competency "could have been or should have been raised in his unsuccessful, direct appeal." Doc. 16, Ex. H, R. 26. Florida's First District Court of Appeal then affirmed that decision without opinion. Doc. 16, Ex. J. This claim therefore appears to be procedurally barred. See Zeigler v. Crosby, 345 F.3d 1300, 1309-10 (11th Cir. 2003). Petitioner has not shown cause for the default and resulting prejudice or a fundamental miscarriage of justice.

II.     Discussion.

    A.     *Petitioner's Procedural Competency Claim*

Throughout his filings in this proceeding, Petitioner claims both that a competency hearing never occurred, which was the subject of his Rule 3.850 motion for post-conviction relief in state court, and that a competency hearing did occur but was deficient due to the trial court's failure to hear testimony from two or more expert witnesses. A charitable explanation for Petitioner's inconsistency is that he does not consider a competency hearing to be a "hearing" absent testimony from expert witnesses. In any case, the trial court found and the record reflects that a competency hearing did take place and that the trial court found Petitioner to be competent. See Doc. 16, Ex. H, R. 26. The Court agrees with the Magistrate that Petitioner has failed to present clear and convincing evidence to rebut this finding of fact and hereby adopts that portion of the Magistrate's Report. Therefore, Petitioner does not have a procedural competency claim.

    B.     *Petitioner's Ineffective Assistance Claim*

Because a hearing did in fact take place, Petitioner's claim that his counsel was ineffective for not objecting to the trial court's failure to hold a hearing is without merit. In his objection to the Magistrate's Report and Recommendation, Petitioner appears to concede that a hearing took place but argues for the first time that his counsel was ineffective for stipulating to his competency at the hearing. See Doc. 28 at 4-5. Even if the state court's failure to adhere to Rule 3.210 of the Florida Rules of Criminal Procedure is not a cognizable claim in habeas proceedings, Petitioner asserts that his counsel's decision to stipulate to his competency and not object to that failure constituted ineffective assistance of counsel. Petitioner claims that, had the

state court heard testimony from two expert witnesses at the hearing, the court would have found Petitioner to be incompetent. This specific claim was not argued in the instant petition, nor was it raised on direct appeal or considered by the state circuit court when it denied Petitioner's Rule 3.850 motion, in which Petitioner asserted only that a competency hearing never took place. See Doc. 16, Ex. H, R. 5, 26. This claim therefore appears to be procedurally barred.

In arguing that his counsel erred by not objecting when the trial court failed to hold a competency hearing, Petitioner relies chiefly on a court-ordered report by Dr. D'Errico. In that report, which was issued on July 31, 2003, Dr. D'Errico found that Plaintiff appeared to be incompetent and recommended that he be hospitalized for treatment at Florida State Hospital for one to three months. Doc. 6-2, Ex. A. As the Court has noted, a competency hearing was in fact held nearly two months later, on September 26, 2003, and the trial court found Petitioner to be competent. See Doc. 16, Ex. H, R. 26.

In the Report and Recommendation, the Magistrate noted the contradicting assertions by Petitioner in grounds one and two of his petition. In ground one, Petitioner argues, as he did in his Rule 3.850 motion, that his counsel was ineffective for failing to object when the trial court proceeded to trial without holding a competency hearing. In an addendum to ground two of his petition, Petitioner argues that his due process rights were violated when the trial court held a competency hearing but failed to comply with Rule 3.210 by calling two expert witnesses to testify. The Magistrate also noted that the record indicates Petitioner's counsel stipulated to his competence at the competency hearing. Without determining whether the claim was exhausted, the Magistrate drew the logical inference that Petitioner's ineffective assistance claim was alternatively based on his counsel's stipulation to Petitioner's competence and his counsel's

failure to object to the court's noncompliance with Rule 3.210 at the competency hearing, even though Petitioner did not specifically assert this claim in his petition.

In recommending that the petition be denied, the Magistrate found in part that counsel's stipulation to Petitioner's competence at the September 26, 2003, competency hearing "apparently occurred after Petitioner had received mental health treatment at Florida State Hospital for about two months for his apparent incompetence." Doc. 24 at 7. The Magistrate then reasoned that "Petitioner has not shown that this was attorney error or caused prejudice to the outcome. That Petitioner appeared incompetent earlier and then received treatment does not demonstrate error of counsel or prejudice. The issue was Petitioner's competence on September 26, 2003." Doc. 24 at 7.

In his objection to the Report, Petitioner asserts that he never received treatment from Florida State Hospital, and he has included in a supplement to his objection a form from the Florida Department of Children and Families (Doc. 28 at 7) stating that there is no record of an Eddie Ash at Florida State Hospital. Petitioner asserts in the supplement to his objection that "after the evaluation, he never left for a Florida State hospital (sic) and remained in Jefferson County Jail until being moved to Gadsden County Jail." Id. at 2. Because the competency hearing has not been transcribed, and because there is no note of treatment at Florida State Hospital in the record, there is nothing to rebut Petitioner's assertion. Therefore, the Court does not adopt that specific finding of the Magistrate. However, the Court does note that, at his sentencing hearing, Petitioner argued that he never saw a doctor after Dr. D'Errico's July 31, 2003, evaluation. In response, the trial court noted the two-month-old evaluation and rejected Petitioner's assertion. As the Magistrate points out, the following conversation took place at

Petitioner's June 30, 2004, sentencing:

> THE DEFENDANT: Whenever I went to trial, I ain't know - - I ain't have no understanding of what was going on in my trial, you know.
>
> THE COURT: Mr. Ash, don't even go down that road with me.
>
> THE DEFENDANT: Well, I'm just telling you - -
>
> THE COURT: We talked too much prior to trial.
>
> THE DEFENDANT: Well, I also got paperwork right here, where - - right here, where you know what I'm saying, that I ain't understand what was going on with the trial. I was told like if I was to go to trial, if I go to trial, I could go home. I thought I was gonna be going home, but they ain't send me home. That right there, that's paperwork from my doctor where I wasn't even supposed to went to trial.
>
> THE COURT: This is an evaluation made July 31st, 2003, Mr. Ash. Don't even go there with me, sir. I'm not going to play this game with you.
>
> THE DEFENDANT: I'm not playing a game, sir.
>
> THE COURT: You are playing games. You've attacked counsel at every turn, and then during the trial you turned to him and said what a great job he was doing.
>
> THE DEFENDANT: I didn't understand - -
>
> THE COURT: And then you turned around and said, "I didn't like what he did."
>
> THE DEFENDANT: Because I ain't understand what was going on, sir.
>
> THE COURT: Mr. Ash - -
>
> THE DEFENDANT: Well, I was supposed to - - My doctor said that, you know what I'm saying, that I was incompetent to stand trial. I wanted to go along with what my doctor said. I never really - - Nobody ever sent me to a doctor to [find] me competent or nothing. He just went ahead on and sent me to trial without seeing my doctor or anything.
>
> MR ALLMAN [the prosecutor]: Judge, there was an issue of competency for Mr. Ash.

  THE COURT:  That's correct, there was, and it was addressed.

  MR. ALLMAN:  Correct.  That was before Mr. Leace [defense counsel] ever got in on the case.

  THE DEFENDANT:  I never seen a doctor.

  MR. ALLMAN:  My review of the file shows that back on September 26th of 2003, the defendant was back in court before Your Honor.  At this time he was represented by Mr. Garcia.  And at that time there was a stipulation to his competency, and the Court, in fact, did find him competent to proceed.  That all occurred on September 26th of 2003, long before the trial.

  MR. LEACE:  And, Judge, for record purposes, I entered the case after that date.

  THE COURT:  I'm aware of that.

  MR. LEACE:  And at the point that I entered the case, I was made aware of the previous motion to find the defendant incompetent, or at least to be evaluated.  I was also aware of the Court's, this honorable Court's ruling that he was competent, and at no time during my representation of Mr. Ash did his competency become an issue in my mind.

  THE COURT:  Okay.  Anything else?

  THE DEFENDANT:  I'm saying how can the Court make me competent?  I never seen no doctor or nothing.  And I was incompetent.

  THE COURT:  Mr. Ash, don't go down that road, because you saw the doctor.

  THE DEFENDANT:  I ain't seen no doctor.

  THE COURT:  There was a report submitted and you were found by this Court to be competent to proceed.  Now, if you have anything else you want to tell me, fine, but get off of this competency thing.

  THE DEFENDANT:  I never seen a doctor.  That's what I'm saying.

  THE COURT:  Don't stand there and lie to the Court.

Doc. 16, Ex. C., R. 311-16.

In the instant petition, Petitioner continues to assert that he never saw a doctor and was never treated after his evaluation by Dr. D'Errico on July 31, 2003.  Although he has presented evidence that there is no record of him being treated at Florida State Hospital, the hospital recommended by Dr. D'Errico, the record shows that he was in fact treated by a doctor after his evaluation.  Moreover, both of Petitioner's attorneys stipulated to Petitioner's competency – Mr. Garcia at the competency hearing and Mr. Leace at the sentencing hearing.  The Court does not find Petitioner's assertion that he never saw a doctor for treatment any more credible than his assertion that a competency hearing never took place.  Therefore, the Court agrees with the Magistrate that Petitioner has not shown that his attorney's stipulation to his competency was not in error.  In any event, as stated above, this specific claim is procedurally barred due to Petitioner's failure to raise it in state court.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge (Doc. 24) is ADOPTED and incorporated herein, except as noted in this order.

2. Petitioner's amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. 6), challenging his conviction after a jury trial for armed robbery with a firearm and attempted armed manslaughter with a firearm in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 02-613CFA, is DENIED WITH PREJUDICE.

3. The Clerk is directed to close the file and terminate all pending motions.

**DONE AND ORDERED** this   *21st* day of April, 2009

       *s/Maurice M. Paul*
       Maurice M. Paul, Senior District Judge